Filed 6/10/24  P. v. Baez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH ANTHONY BAEZ,<br><br>    Defendant and Appellant. | G062249<br><br>(Super. Ct. No. 11ZF0107)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cynthia Marie Herrera, Judge.  Affirmed.

Melanie L. Skehar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Joseph Anthony Baez was convicted of second degree murder in 2013. He was sentenced to 45 years to life in prison, which included a 25-year gun enhancement (Pen. Code, § 12022.53, subds. (d) & (e)(1))[1] and a five-year enhancement for a prior felony conviction (§ 667, subd. (a)(1)). Defendant's sentencing was later reopened upon a request from California Department of Corrections and Rehabilitation (the Department). During resentencing, defendant requested under section 1385 that the trial court strike the prior felony and gun enhancements or, in the alternative, impose a lesser gun enhancement of 10 or 20 years. The court refused. While it found several mitigating circumstances to be present, it determined granting defendant's request would endanger public safety. On appeal, we find the court acted within its discretion in denying defendant's resentencing request. As such, the judgment is affirmed.

I

FACTS AND PROCEDURAL HISTORY

*A. The Trial*

In April 2011, defendant was indicted for murder (§ 187, subd. (a)), street terrorism (§ 186.22, subd. (a)), and four other misdemeanor counts that arose from the violation of a gang injunction (§ 166, subd. (a)(4)). Various enhancements were alleged in connection with the murder count. It was also alleged that defendant had several prior felony convictions.

Defendant pled guilty to the four misdemeanor counts, while the counts for murder and street terrorism went to trial. The following summary of the evidence presented at trial is taken from our prior opinion in this case, *People v. Baez* (July 29, 2015, G049120) [nonpub. opn.].

---

[1] All further undesignated statutory references are to the Penal Code.

"Defendant was a member of the Orange Varrio Cypress gang (OVC). Robert Reil was a shotcaller, or gang leader, of OVC . . . . [who] was married to Amour Villamar, a member of the Anaheim Travelers gang, an enemy gang. Villamar was a methamphetamine addict.

"Villamar and Reil attended a New Year's party in Orange at the house of one of Reil's 'homeboys,' or gang members. They were at the party for a day or two.

"On the night of the incident, January 3, 2010, while still at the party, Villamar wanted to get high, but was out of drugs. She called Bernal Felix, a drug dealer from whom she had purchased five or 10 times. . . .

"Villamar was with Reil and defendant when she called Felix. Defendant wanted to know about amounts or prices. Villamar asked Felix to meet her at a particular street. Reil asked another OVC gang member, Christian Galindo, to drive them to Oak Street, where they were going to meet Felix.

"Galindo, Villamar, Reil and defendant drove to Oak Street, which was disputed gang territory. Defendant knew there could be trouble if they ran into a rival gang. When they got to Oak Street, Villamar got out of the car first. Shortly afterwards, defendant and Reil got out of the car as well. Defendant and Reil were both carrying guns. Villamar went over to Felix's car and saw that he had a passenger in his car. It was Felix's friend, Carlos Lopez. Villamar got into the back seat of Felix's car and told him to move the car.

"Felix slowly began to pull forward and Villamar saw in the glass the reflection of a silhouette, which was not Reil's. According to Villamar, seconds after the car started to move, she heard a loud noise like a window breaking and Felix slumped over, screaming in pain. Her first thought was to jump out of the car.

"According to Lopez, Felix moved the car 'very slowly' in response to Villamar's request. Lopez heard an 'explosion' when the car had traveled not more than 100 meters. Lopez felt pieces of glass fall. Lopez 'saw a shadow, and it put a hand

3

inside with a pistol.  And [the man with the pistol] said, "What's up, homie," and he fired.'  Felix slumped over, Villamar started screaming, and both she and Lopez jumped out of the car and ran.

"According to defendant, he was not expecting there to be two men in Felix's car.  He testified he was surprised when Villamar got in the back of the car, because he thought she was just going 'to pick up the dope and leave.'  He also testified that he did not expect the car to start moving and he panicked, thinking the men were going to kidnap her.

"Defendant ran towards Felix's car and pulled out his gun.  He said his objective was to stop the car and he broke the windshield with the butt of his gun.  When he did so, it sounded like an explosion.  Defendant testified that he said, 'Stop the . . . car.'  But the car was still moving, so he 'struck down again with the gun' and it went off.  He testified that he did not mean to shoot Felix and he denied having said, 'What's up, homie?'  Defendant also testified that he later learned his gun had gone off twice, but he had not realized it at the time.

"When Villamar started to run, she heard Reil call her name and yell at her to get in Galindo's car.  Villamar, Reil, Galindo and defendant drove away together.  According to defendant, Reil started yelling, '"What . . . happened?"' and defendant replied, '"What was I supposed to do?  I seen him driving away with her."'  Further according to defendant, Villamar told Reil she had asked Felix to move the car and Reil said it was all her fault.

"Felix died of a gunshot wound.  Sometime after the shooting, defendant discussed the matter with his girlfriend, Tanya Dominguez.  Defendant told her that he, Reil, Galindo and Villamar had gone to buy drugs, but it 'went wrong.'  Defendant initially told Dominguez that Reil had shot Felix, but when she pressed him on the point, defendant confessed that he himself had done it." (*People v. Baez* , *supra*, G049120.)

4

## B. The Verdict and Sentencing

In 2013, a jury found defendant guilty of second degree murder and street terrorism. The jury also found it to be true that defendant discharged a gun in committing the murder under section 12022.53, subdivisions (d) and (e)(1), and committed the murder for the benefit of a street gang under section 186.22, subdivision (b)(1). At sentencing, the trial court found defendant had three prior felony convictions.[2] Defendant was sentenced to an aggregate term of 45 years to life in state prison, comprised of the following:

- 15 years to life for the murder conviction under section 187, subdivision (a);
- 25 years to life, consecutive, for the gun enhancement under section 12022.53, subdivision (d); and
- Five years for a prior serious felony conviction under section 667, subdivision (a)(1) (the court struck the other prior felony convictions for sentencing purposes).

The trial court also imposed concurrent sentences of 10 years for the gang enhancement and two years for the street terrorism conviction.

The judgment was largely affirmed by this division, but we found, among other things, that the two-year sentence for street terrorism should have been stayed under section 654. (*People v. Baez*, *supra*, G049120.)

## C. Resentencing

The Department later informed the trial court of a potential error in defendant's sentencing. The court had imposed a 10-year concurrent sentence for the gang enhancement, but the Department asserted this sentence had to run consecutively

---

[2] The enhancements tied to the three prior felony convictions were based on different provisions of the Penal Code: (1) section 667, subdivisions (d) and (e), and section 1170.12, subdivisions (b) and (c)(1); (2) section 667, subdivision (a)(1); and (3) section 667.5, subdivision (b). The trial court also found a fourth prior felony conviction alleged under section 667.5, subdivision (b) to be untrue.

under section 186.22, subdivision (b)(1)(C).  The court recalled defendant's sentence (see § 1172.1, subdivision (a)(1)).  During resentencing, it exercised its discretion under section 1385 to strike the 10-year gang enhancement (§ 186.22, subd. (b)(1)) for sentencing purposes.

Since sentencing had been reopened, defendant asked the trial court to strike the five-year prior felony enhancement under section 1385.  (See *People v. Magana* (2021) 63 Cal.App.5th 1120, 1124 [when the Department "'notifies the trial court of an illegality in the sentence,' the trial court is 'entitled to rethink the entire sentence'"].)  Likewise, he requested under section 12022.53, subdivision (h) and section 1385, that the court strike the 25-year gun enhancement, or, alternatively, impose a lesser included gun enhancement of 10 or 20 years (see § 12022.53, subds. (b) & (c)).[3]  Defendant argued relief was warranted due to the following mitigating circumstances:

- Application of the enhancements would result in a discriminatory racial impact (§ 1385, subd. (c)(2)(A));
- Multiple enhancements were alleged (§ 1385, subd. (c)(2)(B));
- Application of the enhancements would result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C));
- The offense was connected to childhood trauma (§ 1385, subd. (c)(2)(E)); and
- Defendant was a juvenile when the offense was committed (§ 1385, subd. (c)(2)(G)).

The trial court agreed that defendant had established these five mitigating circumstances.  It also reviewed several letters submitted on defendant's behalf by family and friends, as well as various certificates defendant had earned and college courses he had taken.  It further considered that defendant's name had been removed from the

---

[3]  Section 12022.53, subdivision (h), states, "[T]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

6

relevant gang injunction. But the court was concerned by the seriousness of defendant's murder conviction. It also observed that defendant's criminal history prior to the murder conviction showed an "increase in seriousness." Finally, the court noted that in 2018, while serving his current sentence, defendant was convicted for possession of a weapon by an inmate (§ 4502, subd. (a)).[4]

After considering these factors, the trial court denied defendant's request for resentencing because it was not "in the interest[s] of justice" and "would endanger public safety."

Defendant appeals. He contends the trial court's denial of his resentencing request was an abuse of discretion. First, he argues the court failed to give great weight to the existing mitigating circumstances. Second, he argues the court was required to dismiss the enhancements under section 1385, subdivisions (c)(2)(B) and (c)(2)(C). Finally, he argues the court's public safety finding was incorrect as a matter of law and unsupported by the record. We are unpersuaded by these arguments.

II

DISCUSSION

A. *Applicable Law*

Generally, section 1385 allows a court to strike or dismiss an enhancement. (*People v. Barber* (2020) 55 Cal.App.5th 787, 814.) In the context of gun enhancements, it also allows a court to impose a lesser included enhancement. (*People v. Morrison* (2019) 34 Cal.App.5th 217, 222-223.) For example, during resentencing, a court could impose an uncharged 10-year enhancement under section 12022.53, subdivision (b), in lieu of an enhancement of 25 years to life under section 12022.53, subdivision (d). (*Morrison*, at pp. 222-223.)

---

[4] We note that the letters, certificates, and college courses taken by defendant indicated his behavior had changed for the better following the 2018 conviction.

Section 1385, subdivision (c)(1) states, "[T]he court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) then explains that in exercising this discretion "the court shall consider and afford *great weight* to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances *weighs greatly* in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2), italics added.)

Here, the trial court found five mitigating circumstances were present, but it denied defendant's resentencing request on public safety grounds. We review the court's ruling for an abuse of discretion. (*People v. Ruiz* (2023) 97 Cal.App.5th 1068, 1080-1081.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

*B. Application of Section 1385*

Defendant asserts three errors in the trial court's ruling.

First, defendant argues the trial court erred as a matter of law by failing to afford "great weight" to the five established mitigating factors. We disagree. The presence of mitigating circumstances "weighs greatly in favor of dismissing the enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2), italics added.) There is some dispute among appellate courts as to the meaning of "great weight," which the parties discuss. (See

8

*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1096-1098.) But this dispute is irrelevant here. Even the interpretation most favorable to defendant recognizes a court need not afford great weight to the mitigating circumstances if dismissal of the enhancements (or imposition of a lesser enhancement) would endanger public safety. (*Ibid.*) Since the court made such a public safety finding here, the mitigating circumstances were not entitled to great weight under section 1385. To the extent defendant challenges the court's public safety finding, we discuss this below.

Second, defendant appears to argue the trial court misapplied the mitigating circumstances in section 1385, subdivisions (c)(2)(B) and (c)(2)(C). The former states, "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement *shall be dismissed*." (§ 1385, subd. (c)(2)(B), italics added.) Similarly, the latter provides, "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement *shall be dismissed*." (§ 1385, subd. (c)(2)(C), italics added.) Since the court found both of these mitigating circumstances to be present, defendant claims the court was required to dismiss one or more of his enhancements due to the "shall be dismissed" language in these subdivisions.

We reject this argument like every court that has considered it. (*People v. Cota* (2023) 97 Cal.App.5th 318, 335 [listing cases].) As courts have explained, defendant's interpretation of these subdivisions is unreasonable within the broader context of section 1385. "'[T]he statement that a court "shall" dismiss certain enhancements appears as a subpart to the general provision that a "court shall dismiss an enhancement *if* it is in the furtherance of justice to do so." [Citation.] In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice.'" (*Id*. at p. 336.) "'The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety. . . . [I]f we were to read subdivision (c)(2)(B) and (C) as mandatory, then the existence of those factors "would

9

not 'weigh greatly' in favor of dismissal—it would weigh *dispositively*."" (*Ibid*.) Further, interpreting these subdivisions "as mandatory would give 'no effect to the clause "unless the court finds that dismissal of the enhancement would endanger public safety."" (*Id*. at p. 337.)

Third, defendant argues the trial court erred by finding dismissal of his five-year prior conviction enhancement would endanger public safety. He claims the court abused its discretion by evaluating the danger he posed to public safety at the time of sentencing rather than at the time his base sentence would be complete. Specifically, he contends striking the prior conviction enhancement would not lessen his sentence because, due to his life sentence, he would still be subject to a parole hearing after completing his base sentence. At that time, the parole board would decide whether it was safe to release him. He maintains the court failed to consider this factor when making its public safety finding.

In support of his argument, defendant cites *People v. Williams* (2018) 19 Cal.App.5th 1057, 1063 (*Williams*), which addressed resentencing under section 1170.126. *Williams* held, "Determining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced." (*Williams*, at p. 1063.)

We need not determine whether the above holding from *Williams* applies to section 1385. Assuming it does, the record shows the trial court did consider defendant's argument that striking the prior conviction enhancement would not reduce his sentence because his release would still be subject to the parole board's approval. During the hearing below, defendant's counsel argued, "[I]f the five year prior was stricken or dismissed by the court, that wouldn't change [defendant's] sentence really, because he would still get a parole hearing and it would still be at the discretion of the parole board,

10

where a member of the district attorney's office is always present and able to state their positions, where people who are in the best position to look at the factors needed to look at for granting somebody parole are present and able to communicate that. So I don't want to say that it wouldn't matter if the court didn't do that, but the argument that it would lessen his sentence is really untrue."

The trial court accepted his argument. It stated, "*No, I understand that*. He is also serving, it looks like, three years consecutive on another case, which I wasn't aware of until today but that's not before me right now -- but just as far as when his parole date would be." (Italics added.) Based on the record, the court considered this argument and still found striking the prior conviction enhancement would endanger public safety. Thus, a remand for resentencing is not required. (See *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 ["Remand for resentencing is not required . . . if the record demonstrates the trial court was aware of its sentencing discretion"].)

To the extent defendant believes the trial court erred by failing to give this factor sufficient weight in its public safety analysis, we disagree. As explained below, the court's public safety finding is supported by substantial evidence, and we cannot reweigh the evidence on appeal (*People v. Garcia* (2020) 46 Cal.App.5th 123, 144–145).

Based on the record, the trial court could reasonably conclude defendant would be a danger to public safety if either of his enhancements were dismissed. To begin, there is the violent nature of the murder conviction, in which defendant shot the victim during a drug deal. Next, prior to his indictment in this case, defendant had six convictions from 2004 to 2009 for various misdemeanors and felonies, including willful infliction of corporal injury (§ 273.5, subd. (a)) in 2004, exhibiting a deadly weapon other than a firearm (§ 417, subd. (a)(1)) in 2004, possession of a weapon by an inmate (§ 4502, subd. (a)) in 2005, and assault with a deadly weapon (§ 245, subd. (a)(1)) in 2009, among others. As the trial court found, defendant's pattern of crime was escalating prior to the murder indictment. His conviction for assault with a deadly weapon came

11

just two years prior to his indictment for murder.  Then, while serving his current sentence, defendant was convicted of possession of a weapon by an inmate in 2018 (§ 4502, subd. (a)), indicating he still posed a risk of violence.

Defendant highlights the positive strides he has made in prison and the positive letters in the record.  But this argument misunderstands the nature of our review.  Under substantial evidence review, we view the facts in the light most favorable of the judgment.  (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 850.)  We cannot reweigh the evidence on appeal.  (*People v. Garcia*, *supra*, 46 Cal.App.5th at pp. 144–145.)  "'[T]he reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding.'"  (*Ibid*.)  Thus, we cannot conclude the trial court incorrectly weighed the evidence when finding that striking the prior conviction enhancement would endanger public safety.

III

DISPOSITION

The judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

MOTOIKE, J.